Richard J. Pocker
Nevada Bar No. 3568
BOIES, SCHILLER & FLEXNER LLP
777 N. Rainbow Boulevard, Suite 350
Las Vegas, Nevada 89107
Phone:  (702) 464-2800
Fax: (702) 464-2897
         -and-
Philip C. Korologos
Eric Brenner
BOIES, SCHILLER & FLEXNER LLP
570 Lexington Avenue
New York, New York  10022
Phone: (212) 446-2300
Fax: (212) 446-2350
         -and-
George F. Carpinello
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, New York   12207
Phone:  (518) 434-0600
Fax:  (518) 434-0665

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KERZNER INTERNATIONAL LIMITED, ) <br> and KERZNER  INTERNATIONAL                ) <br> RESORTS, INC.,                                         ) <br>                                                                    ) <br>                              Plaintiffs,           ) <br>                                                                    ) <br>              v.                                              ) <br>                                                                    ) <br> MONARCH CASINO & RESORT, INC.,   ) <br> and GOLDEN ROAD MOTOR INN, INC.  ) <br>                                                                    ) <br>                              Defendants.        ) <br> _____ ) | Case No.: 2:06-cv-00102 <br><br><br><br><br><br> **COMPLAINT** <br> **Demand for Jury Trial** |

Kerzner International Limited and Kerzner International Resorts, Inc. (collectively

"Kerzner") as and for their Complaint against Monarch Casino & Resort, Inc. and Golden Road

Motor Inn, Inc. (collectively "Monarch"), allege upon personal knowledge as to their own acts

and to events taking place in their presence and upon information and belief as to all other facts as follows:

**Preliminary Statement**

1.      This is an action for a declaration that Monarch has no right to use the mark "ATLANTIS" in association with a proposed casino in Las Vegas, Nevada that either Monarch or its successors-in-interest intend to build.  Kerzner seeks an injunction preliminarily and permanently enjoining any such use.

2.      Kerzner holds a nationally-registered service mark in the name "ATLANTIS" and has used that mark continuously since at least October 1994 in association with their world class casino and resort "Atlantis" located on Paradise Island in The Bahamas.  Since 1994, Kerzner have expended tens of millions of dollars in the United States to advertise the Atlantis resort to the American market, which is the source of approximately 80% of its customers.  Monarch, which has used the name "Atlantis Casino Resort" for its hotel and casino in Reno, Nevada, since 1996, has been exploring the possible sale of their business assets to third parties.  Monarch has taken the position that it can open a casino in Las Vegas using the "Atlantis" name.  As part of its sale process, Monarch has even made statements to the effect that any purchaser of its assets would have the right to open a casino in Las Vegas using the name "Atlantis," thereby passing off such a casino as being sponsored by, or related to, Kerzner's Atlantis resort and casino.  Monarch has even noted that any such "Atlantis" casino in Las Vegas would get the benefit of the tens of millions of dollars that Kerzner has spent to advertise its Atlantis resort in the U.S. market.

3.      Monarch's (or its successor-in-interest's) proposed use of the "Atlantis" name for a Las Vegas casino would be a direct violation of Kerzner's trademark rights by virtue of

Kerzner's national registration and by virtue of Kerzner's senior use of the name "ATLANTIS". Monarch's proposed use of the "ATLANTIS" mark would also constitute unfair competition and deceptive trade practices under state and federal law and would result in irreparable dilution of Kerzner's mark. Given the substantial likelihood that this infringement and unfair competition will occur in light of Monarch's repeatedly stated position regarding its ability to open a Las Vegas casino, Kerzner seeks judicial intervention to protect its rights.

**Parties**

4.      Plaintiff Kerzner International Limited ("KZL") is a publicly-traded Bahamian corporation (NYSE: KZL) with its principal place of business in Paradise Island, Bahamas. KZL, through its subsidiaries, is the developer, owner and operator of Atlantis, Paradise Island ("Atlantis"), a 2,317-room island destination resort complex in The Bahamas, and a leading developer and operator of luxury resort hotels and gaming properties worldwide, including the Mohegan Sun casino in Uncasville, Connecticut (currently operated by and owned by the Mohegan Tribal Gaming Authority) and a collection of premier properties that primarily operate in the five-star, deluxe-end of the resort market in The Bahamas, Mauritius, Dubai, the Maldives and Mexico.

5.      Plaintiff Kerzner International Resorts, Inc. ("KIRI") is a corporation incorporated in the State of Florida having its principal place of business in the State of Florida KIRI is the owner of the federally registered service mark "ATLANTIS", registration number 2,810,825, for providing casino facilities; entertainment in the nature of live musical and dance performance; production of motion picture films, and nightclubs, bars and casinos, in International Class 41. KIRI administers this and certain other "ATLANTIS" trademarks for Kerzner International pursuant to a service agreement.

6.      Defendant Monarch Casino & Resort, Inc. ("MCRI") is a publicly-traded corporation (NASDAQ: MCRI) incorporated in the State of Nevada having its principal place of business in the State of Nevada, which, through a subsidiary, owns and operates the "Atlantis Casino Resort" in Reno, Nevada.

7.      Defendant Golden Road Motor Inn, Inc. ("GRMI") is corporation incorporated in the State of Nevada with its principal place of business in the State of Nevada, which is a subsidiary of MCRI and is the direct owner of the Atlantis Casino Resort in Reno Nevada.

## Jurisdiction and Venue

8.      This court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, and 28 U.S.C. § 1338(a) in that this case arises under the Trademark Laws of the United States, 15 U.S.C. § 1501 *et seq.* The court has jurisdiction of the state law claims herein under the provisions of 28 U.S.C. § 1338(b) in that such claims are joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. § 1501 *et seq.*

9.      This Court independently has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a), because there is diversity of citizenship and the amount in controversy exceeds the sum or value of seventy-five thousand dollars exclusive of interest and costs.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) because (i) both MCRI and GRMI reside in this District, and (ii) a substantial part of the events or omission giving to rise the claims herein occurred in this District.

**Factual Allegations**

Kerzner's First Use of the Mark "ATLANTIS"
In Connection With Casino Services

11. Kerzner is an international resort and gaming company, which is a leading developer and operator of premier destination resorts, luxury resort hotels and gaming properties worldwide. Kerzner operates in the destination resorts segment, that is, its properties are marketed to customers who are expected typically to make a special trip to visit them, often for a period of time after substantial travel.

12. Kerzner's flagship property is Atlantis, a 2,317-room resort and casino located on Paradise Island in The Bahamas. Since acquiring the property, Kerzner has invested approximately $1 billion to create a unique destination casino resort. The property's features include a 100,000 square-foot casino entertainment complex, an 88,000 square-foot convention facility, 30,000 square feet of retail space, and a three-tower 2,300 room luxury hotel. Atlantis is the world's largest island resort destination. The casino at Atlantis is the largest in the Caribbean.

13. Kerzner (through a predecessor-in-interest) adopted the mark "ATLANTIS" in 1994 in connection with the planned opening of the Paradise Island resort and casino complex. Kerzner was the first person or entity to use the trademark "ATLANTIS", or any similar trademark, in commerce in relation to a casino or casino services in the United States.

14. Atlantis opened in or about October 1994.

15. Although it attracts visitors from all over the world, Atlantis – which is only a short plane ride from most major cities on the East Coast of the United States – has targeted the U.S. market.

16. In particular, beginning in or about 1994, Kerzner, at great expense and effort, has been marketing Atlantis to potential customers in the United States and, in the last ten years, has spent tens of millions of dollars in advertising Atlantis in the United States. Atlantis has also received widespread print and electronic media coverage in the United States, including high-profile feature stories. Currently, approximately eighty percent of the customers at Atlantis are from the United States. Historically, the percentage of U.S. customers at Atlantis has been even higher. It is estimated that Atlantis has generated at least hundreds of millions of dollars of revenue from United States customers and citizens.

17. Plaintiff KIRI has more than 400 employees located in Plantation, Florida, many of whose responsibilities include marketing and reservations for Atlantis in the United States market. A KIRI affiliate markets the casino at Atlantis in the United States through offices presently located in California, Georgia, Illinois, New Jersey, New York, and Texas.

18. As a result of Kerzner's extensive advertising and provision of casino services under the "ATLANTIS" mark, and the widespread popularity of the Atlantis casino, the provision of casino services by Kerzner has come to be, and now is, widely and favorably known to the public under the "ATLANTIS" mark, and this trademark has become identified in the public mind in the United States and throughout the world with the destination resort casino at the Atlantis, Paradise Island Resort.

19. Moreover, as a result of the long experience, care, and skill of Kerzner in providing destination resort casino services under the trademark "ATLANTIS", this mark has not only become widely known but has also acquired a reputation for excellence. As a result of its extensive sales and of the excellence of its product, Kerzner has built and now enjoys

6

valuable good will in its business as represented by the "ATLANTIS" mark in association with casino services.

Kerzner's Federal Registration of
the "ATLANTIS" Mark for Casino Services

20.     On or about, February 17, 1997, Kerzner filed an application with the United States Patent and Trademark Office, application number 75/242339, for the mark "ATLANTIS" for providing, *inter alia*, casino facilities and nightclubs, bars and casinos, in International Class 41.

21.     On February 3, 2004, Kerzner was issued Registration No. 2,810,825 for the "ATLANTIS" mark for use in association with, *inter alia*, casino services and casinos (the "Registration").

22.     The Registration is now in full force and effect, unrevoked and uncanceled, and is owned by Kerzner.  Kerzner's service mark "ATLANTIS" is used extensively in interstate and foreign commerce in association with casino services and has been so used since at least October 1994.  The Registration recognizes that Kerzner's first use of the "ATLANTIS" mark for casino services was in October 1994.

Kerzner's Acquisition of the
"ATLANTIS" Mark For Lodging Services

23.     Kerzner and its affiliates are also the owners of other U.S. trademark registrations and applications of the mark "ATLANTIS", and variants thereof, for theme parks, lodging, and entertainment services.  In addition to Kerzner's primary operations in the Bahamas, Kerzner licenses the "ATLANTIS" name to certain third parties for use in connection with related amusement park and lodging services offered in the U.S. and its territories.

24. For example, pursuant to a July 26, 1996, Assignment and License Agreement (the "Assignment Agreement"), Kerzner owns United States service mark registration No. 1,857,994 for the use of the mark and name "ATLANTIS" for lodging accommodation services. This mark was acquired from Atlantis Lodge, Inc. ("Lodge") by KIRI (then operating under the name Sun International Representation, Inc. ("Sun")). Prior to the Assignment Agreement, Kerzner had entered into a license agreement with Lodge dated October 7, 1994, which provided Kerzner with the "right to advertise its Bahamian development in the United States . . . in any way it chooses."

25. Lodge owned and operated a small hotel in North Carolina which had used the mark and name "ATLANTIS" for lodging accommodation services from in or about June 1963. Lodge obtained its United States service mark registration No. 1,857,994 for "ATLANTIS" for lodging accommodation services on October 11, 1994.

26. Lodge never provided casino services at its North Carolina hotel or otherwise. Lodge never had common law or federal trademark rights to the mark and name "ATLANTIS" for casino services, nor did any of any of its agreements with Kerzner purport to convey or otherwise address rights to the "ATLANTIS" mark and name for casino services.

Monarch's Incipient Infringing Use of the
"ATLANTIS" Mark for Casino Services

27. More than one year after the casino at Atlantis opened, Monarch opened the Atlantis Casino Resort in Reno, Nevada (the "Reno Atlantis"), in April 1996.

28. Prior to opening, in a February 3, 1996, agreement (the "Monarch Trademark Agreement"), Lodge granted Monarch a license with respect to Lodge's federally registered trademark for lodging services. Paragraph 2 of the Monarch Trademark Agreement expressly noted that Lodge's federal trademark was only "for the use of the mark and name ATLANTIS

8

for lodging accommodation services within the United States of America." It also stated that, with respect to "lodging accommodation services," Lodge was aware of "no other person or entity that possesses superior rights to use the mark."

29. Lodge further disclosed to Monarch that it had previously granted Kerzner the "right to use the mark and name ATLANTIS in the Bahamas and to advertise its Bahamian resort property within the United States of America."

30. Like Lodge's prior agreement with Kerzner, the Monarch Trademark Agreement did not purport to convey or otherwise address rights to the "ATLANTIS" mark and name for casino services. Nor did Lodge claim that it had superior rights to Kerzner to use the mark "ATLANTIS" for casino services.

31. Notwithstanding Kerzner's prior use of the "ATLANTIS" mark for casino services and the absence of any license permitting Monarch to use the "ATLANTIS" mark for casino services, Monarch has continuously used the "ATLANTIS" mark for casino services at the Atlantis Casino Resort since the opening of the facility in April 1996.

32. On July 5, 1997, Monarch registered the "Atlantis Casino Resort" mark with the State of Nevada not only with respect to "Hotel, restaurant and bar services," but also, wrongfully, with respect to "casino services." This registration recognized that Monarch's first use of this mark in Nevada for these services was April 29, 1996, which was subsequent to Kerzner's first use of the "ATLANTIS" mark for casino services. In 2002, the five year terms of both of Monarch's Nevada registrations of the "Atlantis Casino Resort" mark expired. Monarch renewed its Nevada registration for this mark in the "hotel, restaurant and bar services" class. Monarch did not purport to renew its Nevada registration for this mark in the "casino services" class.

33.     In 2005, however, Monarch, having realized the monetary value of Kerzner's "ATLANTIS" mark and realizing that the use of a similar name in connection with a casino in Las Vegas, a destination gaming resort location, would tend to confuse and deceive the public into believing that the casino was the same as, or connected with Kerzner and the Atlantis, Paradise Island Resort, began to take the position that it could open an "Atlantis" casino in Las Vegas.  Monarch has even been advising potential purchasers of interests in its business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" mark in connection with casino services in Las Vegas.  Monarch has further noted that any such "Atlantis" casino in Las Vegas would get the benefit of the tens of millions of dollars that Kerzner has spent to advertise its Atlantis resort in the U.S. market.

34.     Because Las Vegas is a national and international casino resort destination, its major resort casinos compete in the same market as other national and international casino resorts, including Kerzner's Paradise Island resort.

35.     Kerzner has informed Monarch that it has no right or ability and never had any right or ability to use, or convey rights to use, the "ATLANTIS" trademark in connection with casino services in Las Vegas, Nevada, either by virtue of the Monarch Trademark Agreement, which is clearly limited to hotel services, or by virtue of its current use of the name in connection with its Reno facility or otherwise.  Kerzner further advised Monarch that its intended use of the "ATLANTIS" mark in relation to casino services would infringe upon Kerzner's first use of the name in relationship to its casino on Paradise Island and also would infringe upon Kerzner's registered trademark for the use of the name with regard to casino and other services throughout the United States and elsewhere.

36.     Monarch, however, has refused to disavow its intention to infringe upon Kerzner's rights in the name "ATLANTIS" for casino services in Las Vegas, Nevada.

10

37. If, pursuant to its stated intentions, Monarch or a third party successor to Monarch's business were to use the mark "ATLANTIS" for a casino in Las Vegas it would constitute a direct infringement and appropriation of the trademark of Kerzner and unfair competition. Continued misrepresentations by Monarch regarding its rights to this mark are also likely to cause confusion, mistake, or deception. In particular, potential purchasers are likely to believe that Monarch's assertion of the right to use the mark "ATLANTIS" for casino services throughout Nevada is authorized, sponsored, or otherwise approved by Kerzner when in fact it is not. Based on this incipient infringement, Kerzner will suffer irreparable harm and be deprived of the value, resulting from the care, skill, industry, investment of capital, and extensive advertising, of the good will they have acquired from the use of the "ATLANTIS" mark now simulated and appropriated by defendant.

38. Upon information and belief, Monarch has performed the acts complained of herein willfully and with knowledge of the infringement that they would cause, and with intent to cause confusion, mistake, or deception, and to appropriate and unfairly trade upon Kerzner's goodwill in the "ATLANTIS" mark.

39. Kerzner has no plain, speedy, or adequate remedy at law because as long as Monarch continues to make misrepresentations about its rights to the "ATLANTIS" mark for casino services in Las Vegas, Nevada, the public and potential purchasers will continue to be confused and plaintiff will continue to sustain a monetary loss.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Section 32(1) of the Lanham Act)**

40. Kerzner repeats and realleges each of the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41. Monarch has repeatedly expressed a claimed right to open a casino in Las Vegas with the "Atlantis" name. Monarch has also been advising potential purchasers of interests in its

11

business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" trademark in connection with casino services anywhere in the Nevada, including in Las Vegas.

42. Registration No. 2,810,825 for the "ATLANTIS" mark for use in association with, *inter alia*, casino services and casinos is in full force and effect, unrevoked and uncanceled, and is owned by KIRI.

43. The Monarch Trademark Agreement is limited to lodging accommodation services only and does not convey Monarch any rights to use the mark Atlantis for casino services.

44. Through the common law or otherwise, Monarch has no other rights to use the Atlantis mark, or any similar mark, in connection with casino services in Las Vegas, Nevada.

45. Kerzner seeks a declaration that use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in Las Vegas would constitute infringement of Kerzner's registered trademark, "ATLANTIS", No. 2,810,825, in violation of § 32(1) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1114(1).

46. By reason of the acts of Monarch alleged herein, Kerzner will suffer irreparable damage and, unless Monarch is restrained from continuing their wrongful acts, the damage to Kerzner will increase.

47. Kerzner has no adequate remedy at law.

### SECOND CLAIM FOR RELIEF
### (Declaratory Judgment Pursuant to Section 43(A) Of The Lanham Act)

48. Kerzner repeats and realleges each of the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

12

49. Registration No. 2,810,825 for the "ATLANTIS" mark for use in association with, *inter alia*, casino services and casinos is in full force and effect, unrevoked and uncanceled, and is owned by KIRI.

50. Monarch has repeatedly expressed a claimed right to open a casino in Las Vegas with the "Atlantis" name. Monarch has also been advising potential purchasers of interests in its business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" trademark in connection with casino services anywhere in the Nevada, including in Las Vegas, Nevada.

51. Use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in connection with a casino in Las Vegas would be likely to cause confusion, mistake or deception among potential consumers of casino services by reason of the fact that consumers would be likely to believe that the Las Vegas casino was in some way properly connected with, approved by, sponsored by, or endorsed by Kerzner.

52. By reason of the acts of Monarch alleged herein, Kerzner will suffer irreparable damage and, unless Monarch is restrained from continuing their wrongful acts, the damage to Kerzner will increase.

53. Kerzner has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to Section 43(C) Of The Lanham Act)**

54. Kerzner repeats and realleges each of the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55. Registration No. 2,810,825 for the "ATLANTIS" mark for use in association with, *inter alia*, casino services and casinos is in full force and effect, unrevoked and uncanceled, and is owned by KIRI.

56. Monarch has repeatedly expressed a claimed right to open a casino in Las Vegas with the "Atlantis" name. Monarch has also been advising potential purchasers of interests in its business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" trademark in connection with casino services anywhere in the Nevada, including in Las Vegas, Nevada.

57. Kerzner seeks a declaration that use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in connection with a casino in Las Vegas would dilute the distinctive quality of said mark and will diminish and destroy the public association of said mark with Kerzner in violation of 15 U.S.C. § 1125(c).

58. By reason of the acts of Monarch alleged herein, Kerzner will suffer irreparable damage and, unless Monarch is restrained from continuing their wrongful acts, the damage to Kerzner will increase.

59. Kerzner has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment Pursuant to**
**Common Law Trademark Infringement and Unfair Competition)**

60. Kerzner repeats and realleges each of the allegations contained in paragraphs 1 through 59 as if fully set forth herein.

61. This claim for relief arises under the common law of trademarks and unfair competition of the State of Nevada.

62. Monarch has repeatedly expressed a claimed right to open a casino in Las Vegas with the "Atlantis" name. Monarch has also been advising potential purchasers of interests in its business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" trademark in connection with casino services anywhere in the Nevada, including in Las Vegas, Nevada.

63. Use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in connection with a casino in Las Vegas would be likely to cause confusion, mistake or deception among potential consumers of casino services by reason of the fact that consumers would be likely to believe that the Las Vegas casino was in some way properly connected with, approved by, sponsored by, or endorsed by Kerzner.

64. Kerzner seeks a declaration that use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in Las Vegas would constitute unfair competition and an infringement of Kerzner's common law trademark rights in the mark "ATLANTIS" in connection with casino services.

65. By reason of the acts of Monarch alleged herein, Kerzner will suffer irreparable damage and, unless Monarch is restrained from continuing their wrongful acts, the damage to Kerzner will increase.

66. Kerzner has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### (Dilution Pursuant to Nevada Law)

67. Kerzner repeats and realleges each of the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68. This claim for relief arises under Section 600.435 of the Nevada Revised Statutes.

69. Monarch's representation to potential purchasers of interests in its business or its assets that Monarch has the right and ability to convey rights to use the "ATLANTIS" trademark in connection with casino services in Las Vegas threatens a dilution of Kerzner's service mark in violation of Section 600.435 in that Kerzner's service mark "ATLANTIS" is a famous mark and Monarch's intended use of "ATLANTIS" in association with a casino in Las Vegas, Nevada will lessen the capability of the "ATLANTIS" mark to identify and distinguish Kerzner's services.

15

70. By reason of the acts of Monarch alleged herein, Kerzner will suffer irreparable damage and, unless Monarch is restrained from continuing their wrongful acts, the damage to Kerzner will increase.

71. Kerzner has no adequate remedy at law.

WHEREFORE, Kerzner prays for judgment as follows:

(a) That the Court declare that:

(i) that use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in Las Vegas would constitute infringement of Kerzner's registered trademark, "ATLANTIS", No. 2,810,825, in violation of § 32(1) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1114(1).

(ii) use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in Las Vegas would constitute false designation of origin and unfair competition in violation of § 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1114(1).

(iii) use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in connection with a casino in Las Vegas would dilute the distinctive quality of said mark and will diminish and destroy the public association of said mark with Kerzner in violation of 15 U.S.C. § 1125(c).

(iv) use of the "ATLANTIS" mark by Monarch, or any successor-in-interest, in Las Vegas would constitute unfair competition and an infringement of Kerzner's common law trademark rights in the mark "ATLANTIS" in connection with casino services.

(v) Monarch has no rights to use the "ATLANTIS" mark in relation to the operation of casinos anywhere outside of Monarch's historical use of the name at the Atlantis Casino Resort in Reno, Nevada, and

      (vi)    Monarch has no right or ability to convey rights to use the "ATLANTIS" trademark in connection with casino services in Las Vegas, Nevada.

    (b)    That Monarch, its officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under it, and all others with notice of the Court's order, shall be temporarily, preliminary and thereafter permanently enjoined from:

      (i)    using in connection with casino services the "ATLANTIS" mark or any other term or terms likely to cause confusion therewith, except in connection with the Atlantis Casino Resort in Reno, Nevada;

      (ii) using in any manner the "ATLANTIS" trademark in connection with a casino in such a manner that is likely to create the erroneous belief that said casino is authorized by, sponsored by, licensed by or are in some way associated with Kerzner, except in connection with the Atlantis Casino Resort in Reno, Nevada;

      (iii)    holding Monarch out as the owner of, or otherwise authorized to use the mark "ATLANTIS" in connection with casino services, except in connection with the Atlantis Casino Resort in Reno, Nevada; and

      (iv) otherwise engaging in any other acts or conduct which would cause consumers to erroneously believe that a casino owned or operated by Monarch was somehow sponsored by, authorized by, licensed by, or in any other way associated with Kerzner.

    (c)    That Monarch, its officers, agents, servants, employees, attorneys, parents, subsidiaries and related companies and all persons acting for, with, by, through or under it, and all others with notice of the Court's Order, and each of them, be temporarily, preliminarily and thereafter permanently enjoined and be restrained from diluting the distinctive quality of the "ATLANTIS" trademark in connection with casino services;

(d) That Monarch immediately cease claiming any ownership of the mark "ATLANTIS" in connection with casino services, except with respect to the Atlantis Casino Resort;

(e) That Monarch be ordered to notify in writing all parties with whom it has discussed its purported rights to the "ATLANTIS" mark for casino services in Nevada that Monarch has no right or ability to convey any such rights, except in connection the Atlantis Casino Resort in Reno, Nevada.

(f) That the Monarch file with the Court and serve upon Kerzner's counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Monarch has complied with the requirements of the Injunction and Order;

(g) That Monarch be required to account for and pay over to Kerzner all damages sustained by Kerzner, the amount of which cannot be calculated at this time;

(h) That Monarch be required to account for and pay over to Kerzner all profits realized by Monarch by reason of their unlawful acts alleged herein, and that such amounts be trebled, as provided by law;

(i) That Monarch be required to pay Kerzner punitive damages as may be permitted by law or in the discretion of the Court;

(j) That Kerzner have such other and further relief as the Court may deem appropriate.

**JURY DEMAND**

Plaintiff requests trial by jury on all issues so triable.

DATED this 27th day of January, 2006.

                BOIES, SCHILLER & FLEXNER LLP


           By:    /s/ Richard J. Pocker
                Richard J. Pocker
                Nevada Bar No. 3568
                BOIES, SCHILLER & FLEXNER LLP
                777 N. Rainbow Boulevard, Suite 350
                Las Vegas, Nevada 89107
                Phone:  (702) 464-2800
                Fax:  (702) 464-2897

                Philip C. Korologos
                Eric Brenner
                BOIES, SCHILLER & FLEXNER LLP
                570 Lexington Avenue
                New York, New York  10022
                Phone: (212) 446-2300
                Fax: (212) 446-2350

                George F. Carpinello
                BOIES, SCHILLER & FLEXNER LLP
                10 North Pearl Street, 4th Floor
                Albany, New York   12207
                Phone:  (518) 434-0600
                Fax:  (518) 434-0665

                *Attorneys for Plaintiffs Kerzner International*
                *Limited and Kerzner International Resorts, Inc.*